UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAKIM FAKHOURY, APRIL LYNN
FAKHOURY, MICHAEL FAKHOURY, and
RAY FAKHOURY

Plaintiffs,

Case No. 16-cv-13323

v.

UNITED STATES DISTRICT COURT JUDGE

GERSHWIN A. DRAIN

JOHN B. O'REILLY, JR., WILLIAM
DEBIASI, ANDREAS BARNETTE, RON
HADDAD, DEBRA WALLING, and THE
CITY OF DEARBORN

UNITED STATES MAGISTRATE JUDGE

R. STEVEN WHALEN

Defendants.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [15, 16]

## I. Introduction

Plaintiffs are family members residing in the City of Dearborn. Plaintiffs' Amended Complaint alleges that the Defendants, officials of the City of Dearborn, unlawfully harassed, prosecuted, and conspired against them with the goal of divesting the family of its commercial properties in the City. Pending before the

Court are two Motions to Dismiss filed by the Defendants. A hearing on these matters was held on May 22, 2017. For the reasons that follow, the Court will **GRANT IN PART and DENY IN PART** the Motions to Dismiss [15, 16].

## II. Facts

This case involves four Plaintiffs (hereinafter "April," "Hakim," "Michael," and "Ray"), all members of the Fakhoury family. Dkt. No. 3 at Pg ID 165. April and Hakim are married; Michael and Ray are their sons. *Id.* The Fakhoury family resides in the City, where they own and operate various businesses in the West District of the City. *Id.* at Pg ID 168–69. Hakim was vocally critical of the Mayor of Dearborn, Defendant John B. O'Reilly, Jr. (hereinafter "O'Reilly"). *Id.* at Pg ID 169. Hakim would criticize O'Reilly on matters that he believed were inappropriate or not lawfully being done within the City. *Id.* O'Reilly would often become upset after Hakim voiced his criticisms. *Id.* at Pg ID 170.

Another source of contention between Hakim and O'Reilly involved the Brownfield Credit. *Id.* Hakim qualified for this credit which allows a property developer to obtain millions of dollars in state tax credit so long as the owner builds adjacent to properties that are blighted. *Id.* O'Reilly demanded repeatedly that Hakim sell the Brownfield Credit to the City, which Hakim rejected. *Id.* Eventually, Hakim filed a lawsuit against the City alleging a due process violation concerning the City's efforts to take the Brownfield Credit away from the

Fakhoury family. *Id.* at Pg ID 170. This caused further strained relations between Plaintiffs and O'Reilly. *Id.* Another source of contention between the Plaintiffs and O'Reilly was the issue of paid parking. *Id.* Under the City's parking ordinance, tenants and customers were repeatedly ticketed, which affected the Plaintiffs' businesses and their tenants. *Id.* O'Reilly and the City refused the Plaintiffs repeated requests to remove paid parking to make the West District more business friendly. *Id.* at Pg ID 171.

During the paid parking dispute, Plaintiffs partnered with Mike Hamame. *Id.* Under the business partnership, Hamame and the Fakhoury family assumed equal ownership interests within the West District of Dearborn. *Id.* According to the Plaintiffs, unbeknownst to them at the time, Hamame collaborated with O'Reilly to divest the Fakhoury family of its properties within the City. *Id.*

On February 15, 2013, O'Reilly and Defendant Debra Walling, the City's Chief of Staff for the Mayor (hereinafter "Walling"), met with Hamame to discuss the issue of paid parking. *Id.* At this meeting, O'Reilly advised Hamame that if his family wanted to do business in the City, they must dissolve their partnership with the Fakhoury family. *Id.* at Pg ID 172. O'Reilly indicated that once Hamame fulfills the objective of divesting the Plaintiffs of their properties, O'Reilly would make the West District more business friendly, including with respect to paid parking. *Id.* The relationship between the Fakhoury family and the Hamame

family soon deteriorated resulting in thirteen lawsuits regarding ownership of properties within the City. *Id*. at Pg. ID 172–73.

Following this, Plaintiffs allege that O'Reilly used his office to: (1) order police to target and harass the Fakhoury family; (2) order police and City attorneys to prevent the Fakhoury family from entering their own business properties; and (3) instruct prosecutors to charge the Fakhoury family without probable cause. *Id*., p. 10–11 (Pg. ID 173–74). It is alleged that O'Reilly orchestrated his plan to deprive the Fakhoury family of their properties by stating publicly that he had a meeting with Hamame and that "Mike Hamame has taken . . . and begun the eviction process on the property." Also, in February of 2013, in an open session before the public, in order to further his scheme to oust the Plaintiffs from the City, O'Reilly stated that "Hakim Fakhoury no longer owns property in the District. Mike Hamame owns the notes." Consequently, O'Reilly explained "[t]his is a new day in the District and the future is bright."

Plaintiffs also allege that Defendant Ron Haddad, the Chief of Police for the City, encouraged harassment of the Fakhoury family by ratifying his officers numerous arrests, condoning their unlawful actions towards the Fakhoury family and allowing the Hamame family to threaten and keep the Fakhoury family from entering their jointly owned properties. *Id*., p. 3, 11 (Pg. ID 166, 174). Haddad and O'Reilly issued a Special Intelligence Bulletin to other police officers which

casted the Fakhoury family as "threats to business" and "suspects". *Id.*, p. 14–15 (Pg. ID 177–78). The Bulletin stated that "court proceedings and evictions are imminent" and "Hamame feels that the possibility for violence will escalate[,]" thus officers were "asked to give special attention and extra patrols" of the jointly owned properties in the West District during February of 2013. According to the Plaintiffs, the Bulletin subjected the Fakhoury family to arbitrary arrests and caused extreme embarrassment. On one occasion, before the Bulletin was even issued, Plaintiffs claim that at least five police officers (some with weapons drawn), circled Hakim's car to show force and intimidate him. During this altercation, Defendant Andreas Barnette, a Sergeant in the Dearborn Police Department, was one of the officers present. *Id.*, p. 15 (Pg. ID 178).

In March of 2013, the City, at the direction of O'Reilly, falsely informed tenants of Plaintiffs' properties that they had been defrauded by the Plaintiffs and the Hamames were the rightful owners of the properties. *Id.* at Pg ID 176; Ex D. The City instructed at least one tenant to contact the police and file a police report concerning the purported fraud. *Id.* This tenant met with Barnette and filed the police report. *Id.*, Ex. D. Sergeant Barnette also contacted the realtor involved with leasing the subject property and informed the realtor that if he did not come down to the station and provide a statement that he would be considered a suspect in a potential fraud. *Id.*

In June 2013, April reported to police that Hamame threatened her life. *Id.* Instead of investigating Hamame, Defendant Barnette brought criminal charges against April, for allegedly filing a false police report. *Id.* at Pg ID 179. A jury acquitted April. *Id.* This was one of many criminal charges brought against the Fakhoury family.

According to the Fakhoury family, as of June 2013, they had legal control to manage all of their properties, which was granted by a court. *Id.* at Pg ID 180. However, on August 16, 2013, Hamame wrongfully obtained an injunction from the state court banning the Fakhoury family from entering their properties to collect rent and manage the properties. *Id.* After the injunction order was entered, Plaintiffs pleaded with Defendants Haddad and Walling to stop harassing them and to allow them to have full access to their properties. *Id.* at Pg. ID 181. However, under threats of arrest, the Fakhoury family was barred from entering their property and collecting rent, which averaged in excess of $500,000 per month. *Id.*

Defendant William Debiasi is the City of Dearborn's Assistant Prosecutor. *Id.*, p. 3 (Pg. ID 166). According to the Complaint, Debiasi issued "bogus" criminal charges targeting the Fakhoury family *Id.*, p. 21 (Pg. ID 184). For example, the charges against April include the following:

- Filing False Police Report on March 4, 2013, Case No. 13C59570M;
- Frauds Unlawful on August l, 2013, Case No. 13 C868l0M;

- Trespassing on August 22, 2013, Case No. 13C78000M;
- Frauds Unlawful on August 22, 2013, Case No. 13C77980M;
- Trespassing on September 17, 2013, Case No. 13C80210M; and
- Breaking and Entering, Entering Without Authority on September 17, 2013, Case No. 13C80200M.

*Id.*, p. 21 (Pg. ID 184).

The charges against Hakim include the following:

- Trespassing on September 17, 2013, Case No. 13C80230M; and
- Trespassing on December 11, 2013, Case No. 14C90200M.

*Id.*, p. 23 (Pg. ID 186).

The charges against Michael include the following:

- Breaking and Entering on August 24, 2013, Case No. 13C78090M.

*Id.*, p. 24 (Pg. ID 187).

The charges against Ray include the following:

- Breaking and Entering on September 17, 2013, Case No. 13C80160M; and
- Trespassing on September 17, 2013, Case No. 13C80170M

*Id.*, p. 25 (Pg. ID 188).

On November 8, 2013, the Michigan state court judge who entered the injunction order denied Dearborn Ventures Capital, LLC's and West Village

Common Holdings, LLC's motion to hold the Fakhoury Plaintiffs liable for trespass based on the August 16, 2013 injunction order. *See* Plfs.' Sur-Reply, Pg ID 802. In January of 2014, the same state court judge conducted a hearing on April's emergency motion to address the August 16, 2013 order and held:

> IT IS ORDERED that the validity of the Order entered by this Court on August 16, 2013 ("Injunctive Order") and therefore the substance and import thereof, are matters still to be determined in this Court upon further review and determination after the parties are given an opportunity at a motion and hearing to address the validity of that Order.

On June 13, 2014, after numerous adjournments, the circuit court entered an order which rescinded the August 16, 2013 injunction against the Fakhoury family. *Id*. at Pg ID 180–81. The court vacated the order ab initio "for reason that the court was misled into its entry." *Id*. That same month, the Fakhoury family ended their dispute with the Hamame family after a settlement, which resulted in millions of dollars lost and a loss of assets for the Plaintiffs. *Id*. at Pg ID 189. After the settlement, Hamame phoned O'Reilly to inform him that the Fakhoury family was divested of the property. Then, on October 21, 2014, the City voted to phase out paid parking "based on the recommendation of the Mayor." *Id*. at Pg ID 190.

According to the Plaintiffs, even armed with the knowledge that the injunction was unlawfully obtained and vacated, Defendant Debiasi, under the

direction and influence of O'Reilly, Walling and the City of Dearborn, continued to prosecute the Plaintiffs absent any probable cause. *Id.* at Pg ID 186.

As a result of the Defendants' conduct, Plaintiffs allege a litany of financial, personal, and emotional damages. *Id.* at Pg ID 191. Plaintiffs bring a total of eight counts (three counts of malicious prosecution under state and federal law, violation of the Equal Protection Clause, First Amendment Retaliation, conspiracy, undue process and gross negligence) against six different defendants. Pending before the Court are two separate Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6): one on behalf of the Defendants in their individual capacities and one on behalf of the Defendant City. Both motions cross-reference each other. Accordingly, the Court will consider both motions together.

### III. Legal Standard for Motion to Dismiss Pursuant to Rule 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* The plausibility standard requires "more

than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.*

In considering a motion to dismiss, the Court is limited in the documents it can consider: "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## IV. Discussion & Analysis

### A. Malicious Prosecution

The Complaint brings three separate claims for malicious prosecution: one pursuant to 42 U.S.C. § 1983 against Defendants O'Reilly, Walling, Barnett, and Debiasi; one pursuant to 42 U.S.C. § 1983 against the City of Dearborn; and one pursuant to Michigan state-law against all of the Defendants.[1]

"To state a valid federal civil rights claim for malicious prosecution in violation of the Fourth Amendment, a plaintiff must allege facts meeting four elements: (1) a criminal prosecution was initiated against the plaintiff and the

_____

[1] Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, it need not discuss Plaintiffs' state malicious prosecution claim.

defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) (internal quotations omitted).

Defendants argue that the Plaintiffs' Complaint fails to adequately plead a lack of probable cause. Dkt. No. 15, p. 16 (Pg. ID 544). The Defendants' argument turns on the timing of the state court's injunction order, which was dated August 16, 2013, but vacated on June 13, 2014. According to the Defendants, "[t]he temporal paradox created by voiding the Order *nunc pro tunc* cannot alter the fact that at the time of Plaintiffs' prosecution, probable cause existed to justify those arrests and prosecutions." *Id.* p. 19 (Pg. ID 547). In response, the Plaintiffs claim that even after the injunction order was vacated, the Defendants continued to charge them, without probable cause until September 2014. Dkt. No. 20, p. 27 (657).

"[T]o the extent a malicious prosecution claim is actionable under § 1983, the Supreme Court has held that the plaintiffs must prove that the state actors *commenced or continued* to prosecute without probable cause to believe the crime was committed and that the defendant committed the crime." *Pierzynowski v.*

*Police Dep't City of Detroit*, 941 F. Supp. 633, 642–43 (E.D. Mich. 1996) (Gadola, J.) (emphasis added).

The Amended Complaint references two types of malicious prosecution; malicious prosecution of the Plaintiffs pursuant to the injunction order; as well as malicious prosecution prior to the imposition of the injunction order, against April for filing a false police report and for frauds unlawful.

### 1. Does the Amended Complaint Adequately Plead that the Defendants Commenced Injunction-Related Prosecutions Without Probable Cause?

Based on the Amended Complaint and as a matter of law, the Court finds that when the individual Defendants *commenced* prosecution of the Fakhoury family, pursuant to the injunction, valid probable cause existed. The Amended Complaint states that on August 16, 2013, a court entered an injunction banning the Fakhoury family from entering their properties. *See* Dkt. No. 3, p. 17 (Pg. ID 180). On June 13, 2014, the court vacated the injunction ab initio, *nunc pro tunc*. Nevertheless from August 16, 2013 to June 13, 2014, a valid injunction against the Fakhoury family existed. *See Sleboede v. Sleboede*, 384 Mich. 555, 559, 184 N.W.2d 923, 925 (1971) ("[T]he purpose of a *Nunc pro tunc* order is not to change or alter an order or judgment actually made. In other words its function is not to make an order now for then, but to enter now for then an order previously made.").

According to the Amended Complaint, all charges as a result of the injunction (trespassing and breaking and entering) occurred from August 22, 2013 to December 11, 2013—while the injunction was in effect and before it was judicially vacated. *See* Dkt. No. 3, pp. 21, 23–25 (Pg. ID 184, 186–88). Defendants direct the Court to *Birkenshaw v. City of Detroit*, 110 Mich. App. 500, 513, 313 N.W.2d 334, 340 (1981), where the Court held "even an improperly granted restraining order or injunction must be complied with until it has been judicially vacated." *Id.* As such, because the injunction-related charges were commenced prior to the June 13, 2014 order vacating the injunction, Defendants maintain that the validity of the injunction remained in effect and provided probable cause for the arrests.

Typically, "the existence of probable cause in a § 1983 action presents a jury question, *unless there is only one reasonable determination possible*.") *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (emphasis added). Here, *Birkenshaw* establishes that there was probable cause to commence injunction-related prosecutions between August 22, 2013 and December 11, 2013 as a matter of law. The Court acknowledges that as early as January of 2014, the state court judge issued an order stating the "validity of [the injunction order is a matter] still yet to be determined in this Court." However, the injunction related charges had already been brought against the Plaintiffs in January of 2014. As such, *Birkenshaw*

precludes this Court from concluding that the Defendants commenced injunction related prosecutions without probable cause.

### 2. Does the Amended Complaint Adequately Plead that Defendants Continued Injunction-Related Prosecutions Without Probable Cause?

Plaintiffs also argue that the Defendants continued to prosecute the Fakhoury family after the injunction order was vacated because charges against the Plaintiffs remained pending until September 15, 2014, when the state court dismissed the trespassing and breaking-and-entering charges. Dkt. No. 20, p. 27 (Pg. ID 657).

### i. Defendants O'Reilly and Walling

First, the Amended Complaint fails to sufficiently allege that Defendants O'Reilly and Walling continued to prosecute the Plaintiffs after June 13, 2014. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In this case, the only portion of the Amended Complaint that alleges malicious prosecution after June 13, 2014, reads as follows:

> Indeed, even armed with full knowledge that the Unlawful Order pertaining to the involved properties banning the Fakhoury Family from entry was vacated by the Wayne Circuit Court, *Defendant Debiasi, under direction and influence of Defendants O'Reilly, Walling, and the City of Dearborn, and absent any probable cause,*

*still continued to prosecute Plaintiff Ray Fakhoury criminally to try to convict him to have him subjected to imprisonment*, which Defendants failed as alleged above.

Dkt. No. 3, pp. 25–26 (Pg. ID 188–89) (emphasis added).

According to the standard articulated in *Iqbal*, these bare assertions amount to nothing more than formulaic recitations of elements. The complaint in *Iqbal* plead that the government officials, "'knew of, condoned, and willfully and maliciously agreed to subject [Iqbal] to harsh conditions of confinement 'as a matter of policy, solely on account of his religion race, and/or national origin and for no legitimate purpose.'" *Iqbal*, 556 U.S. at 680–81 (quoting Iqbal's complaint). The complaint in *Iqbal* went on to allege that John Ashcroft was the "principal architect" of the unlawful policy and that Robert Mueller was "instrumental" in executing the policy. *Id*. The Supreme Court found that Iqbal's complaint failed to plead sufficient facts to survive a motion to dismiss. *Id*. at 681 ("It is the conclusory nature of [Iqbal's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").

In this case, the Plaintiffs' bare allegations that O'Reilly and Walling directed and influenced the Fakhoury family's continued prosecution are just like Iqbal's allegations that Ashcroft and Mueller designed and executed discriminatory policies. With *Iqbal* in mind, the allegations against Defendants O'Reilly, Walling, and the City are conclusory and not entitled to any presumption of truth.

Setting aside those conclusory allegations, the remaining factual allegations in the Plaintiffs' Amended Complaint fail to plead that Defendants O'Reilly and Walling, through their own individual actions, violated the Constitution. Therefore the malicious prosecution claims associated with the injunction related charges against Defendants O'Reilly and Walling must be dismissed.

### ii. Defendant Barnette

Although the Amended Complaint cites Sergeant Andreas Barnette for malicious prosecution, Plaintiffs fails to allege that Defendant Barnette participated in any injunction-related prosecutions. Accordingly, any injunction-related claim of malicious prosecution against Defendant Barnette must be dismissed.

### iii. Defendant Debiasi

Turning next to whether Defendant Debiasi continued to prosecute the Fakhoury family after June 13, 2014, the Plaintiffs cite the transcript from the pretrial hearing concerning the Plaintiffs' criminal charges, which took place on September 15, 2014.  At the hearing, the state court dismissed the trespassing and breaking and entering charges against the Fakhoury family. Dkt. No. 3, pp. 25–26 (Pg. ID 188–89) (citing Exhibit I at Dkt. No. 3-9).

Defendant Debiasi opposed dismissing the charges against the Fakhoury family. *See* Dkt. No. 3-9, p. 5 (Pg. ID 208) ("At the time that these particular incidents arose, the injunction had not been vacated, so I think the injunction could

still properly serve as a foundation for, essentially, the trespass, unlawful entry and fraud claims."). As such, Defendant Debiasi continued to prosecute the Fakhoury family despite an absence of probable cause.

However, the malicious prosecution claims against Debiasi must be dismissed because he is entitled to absolute immunity. "The Supreme Court has repeatedly endorsed a functional approach to determine whether a prosecutor is entitled to absolute immunity. This approach looks to the nature of the function performed, not the identity of the actor who performed it. The Court has also explained that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Prince v. Hicks*, 198 F.3d 607, 611 (6th Cir. 1999) (internal citations and quotations omitted). "A prosecutor is entitled to absolute immunity when that prosecutor acts 'as an advocate for the State' and engages in activity that is 'intimately associated with the judicial phase of the criminal process.' " *Id.* (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430–31 (1976). However "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.* (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, (1993)).

Defendants argue that Defendant Debiasi must be dismissed from this litigation because he is entitled to absolute immunity for acts undertaken in

connection with his prosecution of the Plaintiffs. Dkt. No. 15, p. 28 (Pg. ID 556). Defendants are correct.

In this case the Amended Complaint mentions Defendant Debiasi only when issuing and prosecuting criminal charges. Dkt. No. 3, p. 20 (Pg. ID 183, 186). Because all of Debiasi's alleged wrongs occurred within a courtroom while he advocated on behalf of the City of Dearborn, he is entitled to absolute immunity.

Upon finding that the Amended Complaint: (1) fails to state a valid claim for malicious prosecution against Defendants O'Reilly, Walling, and Barnette for the injunction related prosecutions; and (2) that Defendant Debiasi is entitled to absolute immunity, Plaintiffs' federal claims for malicious prosecution, pursuant to the injunction order, must be dismissed.

### 3. Malicious Prosecution of April Fakhoury on Charges Unrelated to the Injunction Order

In addition to the injunction-related prosecutions, Plaintiffs allege that Defendants also maliciously prosecuted April before the injunction took effect. The Amended Complaint states:

> In June 2013, in an attempt to enter her property, Plaintiff April Fakhoury reported that she had her life threatened by Mike Hamame, where he threatened, "I have a bullet with your name on it" causing her to be fearful for her life, which resulted in her filing a police report (Ex F-Police Report).
>
> Rather than take this dangerous threat seriously, Defendants, including the City and Sgt. Barnette, instead initiated and/or brought criminal charges against Plaintiff April Fakhoury, for allegedly filing

a false police report, which resulted in a jury trial pursued by Defendants, resulting in an immediate acquittal of Plaintiff in January 2015.

Dkt. No. 3, p.p. 15–16 (178–79).

The Amended Complaint sufficiently alleges that Defendants initiated a criminal prosecution of April and that the criminal proceedings terminated in April's favor. Additionally, the Amended Complaint alleges that there was no probable cause to prosecute April for filing a false police report. Specifically, the Amended Complaint describes how April attempted to enter her property in June of 2013 and was threatened by Hamame for doing so. Plaintiffs allege that, "[r]ather than take this dangerous threat seriously, Defendants including the City and Sgt. Barnette, instead initiated . . . criminal charges . . . for allegedly filing a false police report." Am. Compl., Dkt. No. 3, ¶ 61 at Pg ID 179.

The Court notes that the Amended Complaint attaches Sergeant Barnette's police report, which appears to outline Barnette's probable cause for April's prosecution. According to Barnette's report, his investigation revealed that "Hamame never left his office during, before or directly after this incident allegedly took place." *Id.* In his report, Barnette indicates that he is "unable to substantiate that this incident took place at all." *Id.*

At the motion to dismiss stage, the Court must accept as true all of the allegations contained in a complaint. *Iqbal*, 556 U.S. at 668. While it is true that

courts are permitted to take judicial notice of some documents of public record, such judicial notice is "limited to allow only the use of such documents for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. Feb. 16, 2005). Moreover, the police report was written by Defendant Barnette. *Blackwell v. Kalinowski*, No. 08-C-7257, 2009 U.S. Dist. LEXIS 51590, at *2 (N.D. Ill. Jun. 18, 2009)("[T]he factual allegations contained in the police report do not become matters of public record suitable for consideration on a motion to dismiss."). April must be given an opportunity to lodge any disagreements with the facts presented in Defendant Barnette's report. As such, the Court cannot rely on Defendant Barnette's police report to conclude that probable cause existed for the false police report charge.

As to Defendant Debiasi, the Court has already determined that he is entitled to absolute immunity. However, Defendant Walling is not entitled to absolute immunity because some of her actions are alleged to have been undertaken in an administrative capacity. In this case, the Complaint mentions Walling in the following circumstances: (1) meeting with O'Reilly and members of the Hamame family, Dkt. No. 3, p. 8 (Pg. ID 171); (2) encouraging the Hamame family to sever business ties with the Fakhoury family, *Id.*, p. 9 (Pg. ID 172); (3) advising Dearborn police to bar and/or harass the Fakhoury family when entering their

jointly owned properties, *Id*., p. 11 (Pg. ID 174); (4) advising Dearborn police to give preferential treatment to the Hamame family, *Id*., p. 18 (Pg. ID 181); and (5) using the City attorneys to target the Fakhoury family, *Id*., p. 20 (Pg. ID 183). Based on the Complaint it does not seem that the allegations against Walling involve her role within the courts as an advocate for the City of Dearborn. Moreover, Walling's alleged activities do not seem related to the judicial phase of criminal process, but rather in an advisory role to the Mayor and to the City police. Accordingly, because Walling's alleged activities are administrative and investigative, rather than prosecutorial, she is not entitled absolute immunity. *See Prince v. Hicks*, 198 F.3d 607 (6th Cir. 1999) (holding that prosecutor was not entitled to absolute immunity for preliminary investigative conduct or based on giving advice to police).

As to Defendant O'Reilly, the Amended Complaint alleges that he ordered the police to target the Fakhourys and to keep them from entering their properties. Indeed, at the direction of O'Reilly and Defendant Haddad, a Special Intelligence Bulletin was issued to the City's police officers in February of 2013, before not only the injunction order but also prior to state court resolution of the Hamame/Fakhoury ownership disputes. The Bulletin stated that the Fakhourys would be evicted from their properties and that officers should "give special attention and extra patrols" to the Fakhourys' west end businesses. O'Reilly is

also alleged to have instructed the City prosecutor to initiate criminal proceedings against the Fakhourys without probable cause. There are sufficient allegations to state a claim against Defendant O'Reilly for malicious prosecution of April concerning non-injunctive related prosecutions. Similarly, the Amended Complaint alleges a malicious prosecution claim against Defendant Barnette for his role in charging April with filing a false police report.

Defendants also assert that they are entitled to qualified immunity. "Although insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to broad discovery [the Sixth Circuit] caution[s] that it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."*Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (internal quotations and citations omitted). "Although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Id.*

"In reviewing issues of qualified immunity at the motion to dismiss stage, the Sixth Circuit applies a two-step inquiry. The first step is to determine if the facts alleged make out a violation of a constitutional right. The second is to ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* "These two

steps may be addressed in any order[,] [b]ut both must be answered in the affirmative for the plaintiff's claim to proceed. If either step is not satisfied, then qualified immunity shields the government officer from civil damages." *Id*. (internal citations and quotations omitted).

Since the defendant officers have raised the qualified immunity defense, plaintiff bears the burden of showing that defendants are not entitled to qualified immunity. *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012). "Plaintiff is thus obliged to plead facts that, viewed in the light most favorable to him, make out a violation of a constitutional right so clearly established in a particularized sense that a reasonable officer confronted with the same situation would have known that his conduct violated that right. Moreover, the allegations must demonstrate that each defendant officer, through his or her own individual actions, personally violated plaintiff's rights under clearly established law." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (internal citations omitted).

That said, Plaintiffs have a clearly established Fourth Amendment right to be free from malicious prosecution by a defendant who has made, influenced, or participated in the decision to prosecute the plaintiff pursuant to a lack of probable cause. *Id*. Having determined that Plaintiffs' alleged right is clearly established, the Court next determines which, if any, of the Defendants personally violated those rights.

April has sufficiently alleged that Walling, O'Reilly and Barnette personally violated her right to be free from malicious prosecution because the Amended Complaint asserts all of them knew there was no probable cause to arrest and charge April for filing a false police report and for frauds unlawful, yet they directed officers to target the Fakhourys and keep them from entering their property. Thus, dismissal of April's malicious prosecution claim for non-injunction related charges against Walling, Barnette and O'Reilly, based on qualified immunity, is therefore improper.

## B. Equal Protection

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). Here, the Plaintiffs rely on a class-of-one theory to support their equal protection claim. Dkt. No. 19, p. 26 (Pg. ID 620).

The Supreme Court recognized the "class of one" theory in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). In *Olech*, a property owner requested the Village of Willowbrook to connect the municipal water supply to her property. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 563 (2000). At first, the Village conditioned the water connection on the property owner granting the Village a 33-

foot easement. *Id*. However, the Village only required a 15-foot easement from other property owners. *Id*. The property owner filed a lawsuit claiming that the Village's demand violated the Equal Protection Clause of the Fourteenth Amendment. *Id*. The Supreme Court, in a short, *per curiam* opinion, held that the property owner could sufficiently allege a claim pursuant to a "class of one" theory. *Id*.

"Class-of-one claims are generally viewed skeptically because such claims have the potential to turn into an exercise in which juries are second-guessing the legislative process." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012). To sustain an equal protection claim brought by a class-of-one, Plaintiffs must show that they: (1) "have been intentionally treated differently from others similarly situated;" and (2) "that there is no rational basis for the difference in treatment." *Vill. of Willowbrook,* 528 U.S. at 564. Defendants argue that dismissal is required because Plaintiffs have not adequately pleaded: (i) different treatment (ii) that there were others similarly situated or (iii) that their treatment lacked a rational basis. Dkt. No. 16, p. 16 (Pg. ID 577).

"To succeed on a 'class of one' equal protection claim, a plaintiff must first prove that it has been treated differently from similarly situated individuals." *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 986 (6th Cir. 2012) (citations omitted). "To satisfy this threshold inquiry, it must allege that it and

other individuals who were treated differently were similarly situated in all material respects." *Id*. (citations omitted). In determining whether individuals are "similarly situated," a court should "not demand exact correlation, but should instead seek relevant similarity." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (citation omitted). Determining whether individuals are similarly situated is generally a factual issue for the jury unless "it is clear that no reasonable jury could find that the similarly situated requirement has been met." *Ryan v. City of Detroit*, 174 F. Supp. 3d 964, 976 (E.D. Mich. 2016) (quoting *Fares Pawn, LLC v. Indiana Dep't of Fin. Insts.*, 755 F.3d 839, 846 (7th Cir. 2014)).

Defendants argue that the Plaintiffs have not properly alleged that they were treated differently from others similarly situated in all material respects. Dkt. No. 16, p. 20 (Pg. ID 581). The Court agrees in part. While it is true that the majority of the charges referenced in the Amended Complaint stemmed from the injunction order which prevents a finding that Plaintiffs were similarly situated to Mike Hamame, who was not subject to such an order, the Amended Complaint alleges much more than just disparate treatment in the form of arrests and charges.

For instance, the Special Intelligence Bulletin directed the police to make extra patrols of the Plaintiffs' properties "since court proceedings and evictions are imminent Hamame feels that the possibility for violence will escalate rapidly when they begin." However, this bulletin was issued sometime in February of 2013,

long before the August 16, 2013 injunction order, as well as prior to court resolution of the property ownership disputes between the Hamame family and the Fakhoury family. Yet, O'Reilly and Haddad issued the bulletin to "protect" the Hamame family even though ownership of the properties had not yet been resolved by the state courts. The Hamame family was allowed to enter the same properties. The Amended Complaint further alleges that Hakim asked for protection from the Hamame family, yet his requests were ignored by police at the direction of O'Reilly, Walling and Haddad.

In this case, contrary to Defendants' arguments, Plaintiffs put forth a short and plain statement showing that they were similarly situated to the Hamame family. When compared to the Hamame family, the Fakhoury family was located in the same City and shared the same or similar business interests and properties. Notwithstanding the similarities between the two families, only the Fakhoury family was subject to harassment, prosecution and a police department that turned a blind eye to Hamame's threatening behavior toward the Fakhoury family. Therefore, based on notice pleading standards and the facts contained within the Amended Complaint, Plaintiffs have sufficiently plead that they were treated differently from others that were similarly situated.

Next, Defendants argue that all actions taken by the Defendants had a legitimate rational basis. Dkt. No. 16, p. 22 (Pg. ID 583). According to the

Defendants, "Plaintiffs have not refuted *every conceivable basis* that might support the government in this case." *Id.* (emphasis added). With this argument, Defendants again overstate the requirements for notice pleading and grossly exaggerate what is required to meet the "plausibility" standard articulated in *Iqbal*. In this case, Plaintiffs plead that the differential treatment the Fakhoury family received was based on O'Reilly's ill-will and a desire to divest the Fakhoury family of their property and status within the City of Dearborn. When taken as true, those reasons do not amount to sufficient rational basis for differential treatment.

Plaintiffs need not refute every conceivable basis for their treatment, as the Defendants suggest. Instead, Plaintiffs sufficiently plead that the Defendants lacked a rational basis for the differential treatment. It is telling that every single case relied upon by the Defendants in this portion of their brief was decided not at the motion-to-dismiss stage, but rather at the motion-for-summary-judgment stage.

Having found that the Plaintiffs' complaint adequately pleads: (i) differential treatment, (ii) similarly-situated others, and (iii) a lack of rational basis, dismissal on their class-of-one equal protection claims would be improper.

As to whether the Defendants are entitled to qualified immunity on Plaintiffs' equal protection claim, the Court concludes Defendants are not entitled to qualified immunity. Taken in the light most favorable to the Plaintiffs,

Defendants would have been aware in 2013 that treating similarly situated property owners differently without a rational basis for doing so violates the Plaintiffs' constitutional rights. As such, dismissal of Plaintiffs' equal protection claim is unwarranted.

C. Conspiracy

"To state a § 1985 claim, a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. The Supreme Court requires that § 1985 claims contain allegations of class-based, invidiously discriminatory animus. The class must be based upon race or other inherent personal characteristics." *Webb v. United States*, 789 F.3d 647, 671–72 (6th Cir. 2015) (internal citations and quotations omitted). The Sixth Circuit also seems to acknowledge the possibility that individuals can join together on a § 1985 violation for the purpose or asserting a fundamental right. *See Browder v. Tipton*, 630 F.2d 1149, 1153 (6th Cir. 1980).

Defendants argue that Plaintiffs' § 1985 claim should be dismissed because Plaintiffs failed to identify cognizable class-based animus. Dkt. No. 16, p. 25 (Pg. ID 586). The Court agrees.

Plaintiffs do not allege or argue that the Fakhoury family's race or class factored into the alleged conspiracy. Instead, Plaintiffs attempt to bring their § 1985 claim asserting that the Fakhoury family has joined together for the purpose of asserting fundamental rights. Dkt. No. 19, p. 31 (Pg. ID 625) ("In this case, there are four individual plaintiffs who have joined together for the purpose of asserting fundamental rights guaranteed under the constitution.").

*"Browder* emphasized that a § 1985(3) claim is not stated merely because deprivation of a fundamental right is alleged; rather the essential allegation must be that conspiratorial action was taken against plaintiff *because* that plaintiff was a member of a class defined by its assertion of fundamental rights." *In re Jackson Lockdown/MCO Cases*, 568 F. Supp. 869, 882 (E.D. Mich. 1983) (Cohn, J.) (emphasis in original). Here, the Plaintiffs have not alleged that they were conspired against because they were members of a protected class. *See* Dkt. No. 3, p. 37 (Pg. ID 200).

Even if the Plaintiffs plead that the conspiracy occurred because of their class, their allegations would nevertheless fail as a matter of law. The Plaintiffs did not allege that they are members of a protected class. Instead, Plaintiffs argue that they are a "class of one," under the Supreme Court's holding in *Willowbrook*. "While the *Willowbrook* Court affirmed the existence of a 'class of one' under an egregious set of circumstances in the equal protection context, we do not read the

*Willowbrook* decision to alter the text or legislative aims of the relevant sections of Title 42." *Underfer v. Univ. of Toledo*, 36 F. App'x 831, 834 (6th Cir. 2002). Therefore, because the Plaintiffs have not sufficiently alleged that they were members of a cognizable class pursuant to 42 U.S.C. § 1985, their conspiracy claim must be dismissed.

### D. First Amendment

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Defendants argue that Plaintiffs' First Amendment claim must be dismissed. The Court agrees.

With respect to protected conduct, the Complaint alleges that Hakim publicly and privately criticized O'Reilly about matters within the city. Dkt. No. 3, p. 6 (Pg. ID 169). In a protected-speech retaliation claim, if the speech relates to a matter of public concern, such as political or social concerns to a community, it is protected. *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 295 (6th Cir. 2012). It is important to note that the Amended Complaint only alleges that Hakim engaged in this protected conduct. However, the Amended Complaint also alleges

that the Fakhoury family filed a lawsuit against the City concerning the Brownfield Credit. Filing a civil action can also be considered protected conduct. *See Beacon v. City of Allen Park*, No. 14-CV-13590, 2015 U.S. Dist. LEXIS 73602, *18 (E.D. Mich. Jun. 8, 2015). For these reasons, the Amended Complaint properly alleges the first element of *Thaddeus-X*.

Next, Plaintiffs allege adverse action was taken by the City, through its officers on behalf of O'Reilly such as targeting, harassing, and supporting the harassment of Plaintiffs, as well as subjecting Plaintiffs to disparate treatment in an effort to oust Plaintiffs from the City. The Amended Complaint alleges more adverse actions than merely the prosecutions for breaking and entering such as Defendant Barnette and other officers circling Hakim's car and drawing their firearms in an effort to intimidate Hakim and his family. The Amended Complaint further alleges that the Defendants, through O'Reilly's orders, told tenants that they were being defrauded by Hakim. Additionally, Barnette allegedly threatened a realtor to file a police report against Hakim if he did not want to be considered a suspect in a purported fraud investigation. Therefore, Plaintiffs have properly alleged the second element of *Thaddeus-X*. Defendants do not dispute this point. Dkt. No. 15, p. 25 (Pg. ID 553).

Third, Defendants argue that Plaintiffs fail to allege a causal connection between their alleged protected conduct and the alleged adverse action. *Id.*

According to the Defendants, the Plaintiffs were prosecuted for breaking and entering, no connection exists between the adverse actions and the speech. Dkt. No. 15, p. 26 (Pg. ID 554).

Contrary to Defendants' argument, the Amended Complaint alleges that the protected conduct quickly proceeded or coincided with the adverse actions. Dkt. No. 3, p. 6 (Pg. ID 196). Accordingly, the Amended Complaint supports the inference of a causal connection.

Defendants are likewise not entitled to qualified immunity from Plaintiffs' First Amendment claim. Because the Court concludes that Plaintiffs have sufficiently alleged a First Amendment violation, the Court turns to the issue of whether Plaintiffs' First Amendment rights were clearly established at the time of the alleged retaliatory conduct. It is well-settled that City officials may not retaliate against people for exercising their First Amendment rights to voice opposition to Government action and to seek redress in the courts. Defendants are likewise not entitled to qualified immunity on Plaintiffs' First Amendment claim.

E. Municipal Liability

Municipalities may be liable under §1983 for acts that the municipality has sanctioned or ordered. *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1998). "To prove municipal liability under §1983, a plaintiff must demonstrate a constitutional violation at the hands of an agent or employee of the municipality." *Fox v.*

*DeSoto,* 489 F.3d 227 (6th Cir. 2007). Municipal defendants may be sued under §1983 for their own constitutional or illegal policies. *Id.*

"When suing a municipality, such as the City, for constitutional violations under §1983, a plaintiff must prove that the deprivation occurred pursuant to a municipal 'policy or custom.' A single decision can constitute a policy, if that decision is made by an official who possesses final authority to establish municipal policy with respect to the action ordered, which means that his decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Flagg v. City of Detroit*, 715 F.3d 165, 174-75 (6th Cir. 2013) (citations and quotations omitted).

Here, the Plaintiffs have alleged that O'Reilly publicly stated that the Fakhoury family no longer owns property in the West District and that Hamame was the true owner. The City, through O'Reilly and Haddad, issued a special intelligence bulletin instructing officers to give extra patrols to the Fakhoury family. O'Reilly, through Walling, instructed officers to keep the Fakhoury family from entering their properties and to arrest them should they attempt to do so. An "official policy often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). The special

intelligence bulletin sets forth a plan of action in which officers were expected to follow.

Additionally, Plaintiffs have alleged sufficient allegations that Defendants "encouraged or condoned" the unconstitutional conduct of the City. "Where, as here, a claim of municipal liability is predicated upon a failure to act, the requisite degree of fault must be shown by proof of a background of events and circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision by the city itself to violate the Constitution." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 394-95 (1989). Further, when a plaintiff establishes the City had "actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens," a policy of inaction can be established. *Id.* at 396.

The Amended Complaint is replete with allegations that either the Plaintiffs or their attorney repeatedly contacted City officials, including O'Reilly, Walling, and Haddad, pleading with them to cease the harassment of the Plaintiffs. As such, the Amended Complaint adequately alleges unlawful municipal custom and policy. Therefore, dismissal of the City pursuant to Rule 12(b)(6) is unwarranted.

F.  Supplemental Jurisdiction

Under the standard enunciated in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), and codified in 28 U.S.C. § 1367(c), this Court has broad discretion to

exercise its supplemental jurisdiction. Even where the district court "arguably ha[s] supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), the [district] court has discretion to decline to exercise its supplemental jurisdiction where the state law claims predominate or where it has dismissed plaintiff's federal claims." *Cirasuola v. Westrin*, 124 F.3d 196, *1 (6th Cir. 1997).

Section 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over related state claims if:

(1)     the claim raises a novel or complex issue of State law,

(2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In determining whether to exercise supplemental jurisdiction, this Court must consider judicial economy, convenience, fairness and comity, and also avoid needless decisions of state law.  *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997).

"[A] federal court with pendent jurisdiction should normally dismiss state claims without prejudice when it appears that the state issues 'substantially predominate' over the federal issues in terms of proof, scope, or

comprehensiveness of the remedy sought." *Bodenner v. Graves*, 828 F.Supp. 516, 518 (W.D. Mich. 1993). Here, the Court concludes that Plaintiffs' state law claims of malicious prosecution, abuse of process and gross negligence substantially predominate over Plaintiffs' federal claims. Plaintiffs' state law claims will require elements of proof distinct from Plaintiffs' federal claims. While analysis of Plaintiffs' state malicious prosecution claim will overlap with Plaintiffs' 42 U.S.C. § 1983 Fourth Amendment malicious prosecution claim, there remains a potential for prolonged pre-trial practice, lengthened jury instructions and jury confusion which will impair judicial economy and trial convenience. Accordingly, the Court will dismiss the Plaintiffs' state law claims without prejudice.

### V. Conclusion

For the preceding reasons, Defendants' Motions to Dismiss [15, 16] are **GRANTED IN PART and DENIED IN PART.**

Count V is dismissed with prejudice.

Counts VI through VIII are dismissed without prejudice.

Defendant William Debiasi is dismissed.

SO ORDERED.

Dated: October 24, 2017        /s/Gershwin A. Drain
                                               GERSHWIN A. DRAIN
                                               United States District Judge

## CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 24, 2017, by electronic and/or ordinary mail.

<u>/s/ Tanya Bankston</u>
Deputy Clerk