UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APRIL LYNN FAKHOURY, *et al*.,

                    Plaintiffs,

vs.

JOHN B. O'REILLY JR., *et al*.,

                    Defendants.

_____/

Case No. 16-13323
Hon. Gershwin A. Drain

## OPINION AND ORDER REGARDING MOTIONS *IN LIMINE* AND SETTING FINAL PRETRIAL ORDER, FINAL PRETRIAL CONFERENCE AND TRIAL DATES

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Presently before the Court are the following pretrial motions, filed by the Plaintiffs: (1) *Daubert* Motion to Exclude Defendants' Damages Experts and Expert Report, (2) Motion *in Limine* to Exclude All Police Reports, (3) Motion *in Limine* to Exclude References to A) Alleged Pre-2013 Judgments, Liens, Receiverships, or Foreclosures Relating to Plaintiff Hakim, B) Alleged Investigations (Including the DOJ Investigation) Relating to Plaintiffs, C) Defendants John B. O'Reilly's and Debra Walling's Personal Finances or Health Issues, and D) Taxpayer Dollars or Costs, (4) Motion *in Limine* to Preclude Defendants' Witnesses Whose Anticipated Testimony Was Not Disclosed from Testifying at Trial, and (5) Motion *in Limine* to Preclude A) the Use and/or

Mention of Polygraph Evidence and/or B)  Evidence Related to April Fakhoury

Being an Alleged Alter Ego of Hakim Fakhoury for the Properties at Issue.

Also, before the Court are the following pretrial motions, filed by

Defendants:  (1)  Motion *in Limine* to Preclude Admission of Kenneth H.

Johnson's Expert Reports and Testimony Relating to the Reports, (2)  Motion *in*

*Limine* to Exclude Admission of State Equalization Values as Evidence of Market

Value, (3) Motion *in Limine* to Preclude Plaintiffs from Admitting Evidence

Contradicting their Global Settlement with the Hamames Based on Judicial

Estoppel, (4)  Motion *in Limine* to Allow Certain Testimony of Defendant Walling,

(5) Motion *in Limine* to Bar Evidence Relating to Haidar-Fakhoury Phone Call,

(6) Motion *in Limine* to Bar Testimony about Alleged Mayoral Ultimatum and to

Preclude Lay Opinion Medical Causation Testimony, (7) Motion *in Limine* to Bar

Certain Testimony from Hakim Fakhoury, and (8) Motion *in Limine* to Bar Certain

Testimony from Tom Tafelski, Keith Woodcock, and the Fakhourys.

The Court conducted oral argument on the parties' pending pre-trial motions

on August 25, 2021, September 1, 2021 and September 15, 2021.

## II.  LAW & ANALYSIS

### A.  Standard of Review

The purpose of a motion *in limine* is to ensure the evenhanded and

expeditious management of trials by eliminating evidence that is clearly

inadmissible. *Ind. Ins. Co. v. General Elec. Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004) (citing *Johasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). A court should exclude evidence on a motion *in limine* only when that evidence is determined to be clearly inadmissible on all potential grounds. *Id.* When a court is unable to determine whether or not certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context. *Id.* Whether or not to grant a motion *in limine* falls within the sound discretion of the trial court. *Branham v. Thomas Cooley Law Sch.*, 689 F.3d 558, 560 (6th Cir. 2012).

Rules 401 and 402 of the Federal Rules of Evidence permit the admission of only relevant evidence. Evidence that is irrelevant is inadmissible. *See* Fed. R. Evid. 402. Evidence is relevant if it has any tendency to make the existence of a material fact more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Rule 701 of the Federal Rules of Evidence provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to
> determining a fact in issue;
> (c) not based on scientific, technical, or other specialized knowledge
> within the scope of Rule 702.

Fed. R. Evid. 701.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A party offering an expert's opinion bears the burden of establishing the admissibility of such opinion by a preponderance of the evidence. *Nelson v. Tennessee Gas Pipeline Co.,* 243 F.3d 344, 251 (6th Cir. 2001). Expert testimony is admissible only if it satisfies the requirements of Rule 702 of the Federal Rules of Evidence, which states:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized
> knowledge will help the trier of fact to understand the
> evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles
> and methods, and;
> (d) the expert has reliably applied the principles and methods
> to the facts of the case.

Fed. R. Evid. 702. The district court must determine whether the expert's testimony meets three requirements: (1) the expert witness must be qualified by "knowledge, skill, experience, training or education," (2) the proffered testimony is

relevant and "will assist the trier of fact to understand the evidence or to determine a fact in issue," and (3) the testimony is reliable in that it is based on scientific, technical or other specialized knowledge. Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529 (6th Cir. 2008).

### B. Plaintiffs' *Daubert* Motion to Exclude Defendants' Damages Experts and Expert Report [#185]

On September 12, 2019, Defendants' experts, Bradford Southern and Paul Schapira, submitted their expert report concluding the Plaintiffs are not entitled to any damages in this matter.

Schapira is qualified as an expert on all of the grounds listed in Rule 702. He has an undergraduate degree from the University of Michigan and an MBA from Carnegie Mellon. ECF 185-4, PageID.17325. He has worked for a number of financial institutions including NBD Bank and other alternative investment firms. *Id*. He has historically done reviews of property valuations. *Id*. at PageID.17326. As part of his experience, he has analyzed appraisals to determine whether they are compliant with the Uniform Standards of Professional Appraisal Practice ("USPAP"). *Id*. at PageID.17352.

During his experience in the banking industry, Schapira reviewed "hundreds and hundreds and hundreds" of appraisals. ECF 185-4, PageID.17354. Schapira's relevant experience includes "almost 9 years working for 2 publicly traded

financial banking institutions" involving "oversight for a $2.0 billion commercial real estate portfolio consisting of real properties nationally with some individual loans up to $50 million in exposure." *Id.* Schapira's work experience afforded him "the opportunity to review several thousand appraisals" and he "regularly interfaced (at times on a daily basis) with federal banking regulators such as the Office of the Thrift Supervision ("OTS"), the Office of the Comptroller of the Currency ("OCC"), the Securities and Exchange Commission ("SEC"), the Financial Regulatory Authority ("FINRA"), and the Federal Deposit Insurance Company." *Id*. at PageID.17148.

"When offering expert testimony, the defendant has 'no burden to produce models or methods of their own; they need only attack those of the plaintiffs' experts.'" *Scott v. Chipotle Mexican Grill, Inc*., 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (quoting *In re Zyprexa Prods. Liab. Litig*., 489 F. Supp.2d 230, 285 (E.D.N.Y. 2007)). That is precisely what Schapira did in this case. Johnson used standard appraisal methodology in his approach, evaluating methods of valuation including the sales approach, cost approach, and income approach, generally employing all three. *See* ECF 185-2, PageID.17147. Schapira used this same methodology, basing his analysis on the income approach, and explaining why the income approach is the best method to use when evaluating commercial real estate used to generate income. *See id*. at PageID.17148-49. Thus, Schapira did in this

case what he spent a decade in commercial banking doing – reviewing an appraisal and critiquing it.

Mr. Schapira is therefore qualified by his education, knowledge, skill, and experience to critique an appraisal of real property utilizing the same methodology as the appraiser. His testimony is presumptively admissible, and Plaintiffs have identified no authority excluding testimony like his.

Plaintiffs argue the Defendants' expert report contains no analysis relating to the events that occurred in and after February of 2013. Section V of the report involves a valuation of the properties on which Plaintiffs currently base their damages case. Plaintiff's remaining arguments are without merit and can be addressed during cross examination. Plaintiffs' objections go to the weight to accord Mr. Schapira's testimony. Plaintiffs' motion will be denied without prejudice.

### C.  Defendants' Motion *in Limine* to Preclude Admission of Kenneth H. Johnson's Expert Reports and Testimony Relating to the Reports [#186]

Plaintiffs retained Kenneth H. Johnson and have proffered him as an expert real estate appraiser. Mr. Johnson prepared a 368-page report ("First Report") rendering his opinion of the real estate values of the 23 properties at issue in this case. Mr. Johnson obtained a value of each property through a Market Approach, Sales Comparison Approach, and Income Analysis Approach. The First Report's

preliminary valuations are computed as of September 1, 2018.  For properties

where improvements were ongoing as of that date, Johnson calculated the value as

of the future date at which the improvements would be completed.  The

Fakhourys' share of the three portfolios purports to have a 2018 market value

totaling $36,951,000.  In Plaintiffs' 6th Amended Rule 26a Disclosures, Plaintiffs

claim to be seeking the value of these properties, less the $2.2 million that they

received from their global settlement agreement with the Hamame family, which

would represent $34,751,000 in alleged damages.  The economic damages figure

listed in Plaintiffs' 6th Amended Rule 26e Disclosures is $34,789,500; it is not

clear why there is a $38,500 difference between those two numbers.

On January 5, 2021, Mr. Johnson produced a letter ("Second Report")

identifying the 2014 SEVs for the 23 properties.  Johnson testified that Plaintiffs'

counsel instructed him to pull the SEV figures for June 2014 because that is when

the loss was incurred. The Second Report purports to show a "Total Assessed

Value" of $11,423,300 and a purported "estimated Total Market Value of

$22,846,600" for all of the listed properties.  However, after realizing a calculation

error, Mr. Johnson produced another letter ("Third Report") correcting the

calculation error.  The error amounts to $850,000 in SEV, which translates into a

$1.7 million error in alleged "Total Market Value."  Johnson cited "[b]ad

arithmetic" as "the only reason for my sloppiness." Johnson considers the Third

Report to be merely a corrected version of the Second Report.

Johnson testified that SEV "is something entirely different" from appraisals

and valuation summaries. He admitted that SEVs are used for taxation purposes

only; tax assessors do not give opinions of value for commerce reasons.  In fact,

according to Johnson, "[i]f an appraiser relied solely on state equalized value to

determine the value of property, I respectfully submit that appraiser would stand in

risk of losing his license."  The figures listed in the Third Report assume that the

Fakhourys owned 100% of the interest in those properties.  But, in the addendum

to Johnson's First Report, Plaintiffs concede that they owned a 50% interest in

what they call the Fakhoury Oasis Portfolio (see Ex. 1, at BATES 4247 n.1), and a

50% interest in what they call the Fakhoury JV Portfolio (see Ex. 1, at BATES

4246 n.1), except for the Village Plaza property at 23400 Michigan Avenue, in

which the Fakhourys had only an alleged 20% interest.  Accounting for these self-

reported ownership shares means that the "Total Market Value of $21,146,600" in

the Third Report (see Ex. 3, at BATES 5327) is overstated by $9,425,540, resulting

in an alleged market value figure – calculated under Plaintiffs' own version of their

unproven allegations – of $11,721,060.  That number, of course, would also need

to be reduced by the $2.2 million the Fakhourys obtained from transferring their

alleged ownership in the properties as part of the Hamame settlement, resulting in Plaintiffs' actual demand of $9,521,060 in economic damages.

Plaintiffs' current theory for economic damages is that the Defendants worked with the Hamames to divest Plaintiffs of their alleged interests in certain properties by forcing them to sell their interests to the Hamames at a below-market price. Under that theory, Plaintiffs' damages would be a variant of "market damages," representing the difference between what the property interests were worth and what the Fakhourys managed to obtain for them.

In this case, the alleged harm occurred in June 2014, when the global settlement was executed and the Fakhourys allegedly lost control of their property interests. In the context of a statute of limitations analysis, this Court has opined under the summary judgment standard that "the Plaintiffs' injury" was the "loss of their commercial properties to the Hamame family in June 2014." ECF 166. Johnson also testified that Plaintiffs' counsel had reported to him their understanding that the relevant loss was in June 2014. The law therefore requires that the Fakhourys measure their alleged damages by computing market value as of June 2014.

However, Johnson's First Report does not do that. Rather, Johnson computes his preliminary valuations as of September 1, 2018. Where improvements to the properties were ongoing as of that date, Johnson calculated

the value based on his opinion of what the properties would be worth once the improvements were completed.  Johnson's estimate of the value of properties more than four years after the Fakhourys held any ownership interest in them – where the estimates include the value of improvements that subsequent owners made to those properties – bears no relation at all to what the properties were worth in June 2014, when they might have been used to calculate Plaintiffs' alleged damages. The First Report and any testimony relating to it are subject to exclusion under Rule 702.

Johnson's Second Report contains an error that overstates the alleged "Total Market Value" by $1.7 million.  *See* Ex. 4, at 48.  Johnson admitted his "sloppiness" for the error, which he blamed on "[b]ad arithmetic."  The Second Report relies solely upon SEV as a basis for computing market value.  It is therefore also excludable for the reasons explained below regarding the Third Report, which are incorporated herein by reference.  The admitted $1.7 million error is alone sufficient to render the Second Report irrelevant under Federal Rule of Evidence 402 and misleading to the jury under Federal Rule of Evidence 403. The Second Report and any testimony relating to it are also excluded from trial.

As to Mr. Johnson's Third Report, the touchstone of proper analysis under *Daubert* is that, to be admissible, the expert must appropriately apply the teachings of his field to the issues confronting the jury.  A testifying expert must "employ[]

in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.  When the testimony of a proffered expert is challenged for insufficient rigor, "the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of the discipline.'"  *Id.* at 149 (quoting *Daubert*, 509 U.S. at 592).  The Sixth Circuit has similarly instructed that "[e]xperts are permitted wide latitude in their opinions, including those not based on firsthand knowledge, so long as 'the expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'"  *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 592).

Thus, under *Daubert*, Johnson may testify to the use of SEV as a proxy for market value only if doing so has a reliable basis in the knowledge and experience of real estate appraisal – the field in which he was proffered as an expert.  But Johnson testified that the exact opposite is true:

> Q. And relying upon state equalized value as a means of valuing a property is not a generally accepted practice in the appraisal community, is it?
>
> A. Absolutely correct.

Ex. 4, at 64.  As Johnson put it, "[i]f an appraiser relied solely on state equalized value to determine the value of property, I respectfully submit that appraiser would stand in risk of losing his license."  *Id*.  That testimony definitively establishes that

use of SEV to estimate market value does not have a reliable basis in the field of real estate appraisal.  *See Valuation for Taxation Purposes As Admissible to Show Value for Other Purposes*, 39 A.L.R.2d 209 (1955 & Supp. 2010) ("It is the overwhelming weight of authority that assessed value is not competent direct evidence of value for purposes other than taxation."). *Id.,* § 4a; *Bowie Lumber Co. v. United States*, 155 F.2d 225, 228 (5th Cir. 1946) (explaining "[t]he great weight of authority holds that, except as declarations against interest, assessments are not admissible as evidence of value in condemnation proceedings."); *United States v. Certain Parcels of Land*, 261 F.2d 287, 290 (4th Cir. 1958) (noting that, "'[i]t is the overwhelming weight of authority that assessed value is not competent direct evidence of value for purposes other than taxation.'"). *Id*. at 290 (quoting 39 A.L.R.2d at 214); *Johnson & Wimsatt, Inc. v. Reichelderfer*, 50 F.2d 336, 337 (D.C. Cir. 1931)(concluding "[i]t is widely recognized that appraisements of property by tax assessors for purposes of taxation are not reliable guides of market value, and consequently not admissible in condemnation proceedings."); *Tarrify Properties, LLC v. Cuyahoga County*, 2020 WL 7490096, *3 (N.D. Ohio Dec. 21, 2020)( "nationwide precedent holds that property tax valuations cannot be used, and are inadmissible, to establish land value for non-tax purposes.").  The overwhelming weight of authority provides that tax assessment valuations cannot be admitted as evidence of market value.

Moreover, the Fakourys have admitted that they did not own a 100% interest in all of the properties as of June 2014.  Applying the alleged ownership figures used by the Fakhourys at the end of the First Report to the SEV figures in the Third Report yields an alleged Total Market Value of the Fakhoury holdings of $11,721,060.  In other words, Plaintiffs wish to place before the jury a damages figure that is inflated by $9,425,540 representing the ownership interests of others.  Under these circumstances, admission of the Third Report would be unduly prejudicial and misleading to the jury.

For all of these reasons, Defendants' Motion to Exclude Admission of Kenneth Johnson's expert reports and testimony will be granted.

### D.  Defendants' Motion *in Limine* to Preclude Admission of State Equalization Values as Evidence of Market Value [#187]

Defendants also move to exclude SEV evidence to show market value. Based on this Court's reasoning excluding the testimony of Mr. Johnson, the SEVs must also be excluded because they are not an appropriate measure of market value and thus their admission will not aid the jury in resolving the damages issue.  *See Valuation for Taxation Purposes As Admissible to Show Value for Other Purposes*, 39 A.L.R.2d 209 (1955 & Supp. 2010) ("It is the overwhelming weight of authority that assessed value is not competent direct evidence of value for purposes other than taxation."). *Id*., § 4a; *Bowie Lumber Co. v. United States*, 155 F.2d 225, 228 (5th Cir. 1946) (explaining "[t]he great weight of authority holds that, except

as declarations against interest, assessments are not admissible as evidence of value in condemnation proceedings."); *United States v. Certain Parcels of Land*, 261 F.2d 287, 290 (4th Cir. 1958) (noting that, "'[i]t is the overwhelming weight of authority that assessed value is not competent direct evidence of value for purposes other than taxation.'"). *Id*. at 290 (quoting 39 A.L.R.2d at 214); *Johnson & Wimsatt, Inc. v. Reichelderfer*, 50 F.2d 336, 337 (D.C. Cir. 1931)(concluding "[i]t is widely recognized that appraisements of property by tax assessors for purposes of taxation are not reliable guides of market value, and consequently not admissible in condemnation proceedings."); *Tarrify Properties, LLC v. Cuyahoga County*, 2020 WL 7490096, *3 (N.D. Ohio Dec. 21, 2020)( "nationwide precedent holds that property tax valuations cannot be used, and are inadmissible, to establish land value for non-tax purposes.").

This motion will likewise be granted.

### E.  Plaintiff's Motion *in Limine* to Exclude All Police Reports [#188]

Next, Plaintiffs move to exclude all police reports.  This motion will be denied without prejudice.  Plaintiffs' broad approach to seeking exclusion of all police reports prevents both defendants and this Court from properly addressing their objections. A party moving *in limine* "should identify the particular evidence at issue and articulate with specificity the arguments supporting the position that the particular evidence is inadmissible on any relevant ground." *United States v.*

*Cline*, 188 F. Supp. 2d 1287, 1292 (D. Kan. 2002) (emphasis added). "A court is well within its discretion to deny a motion *in limine* that fails to identify the evidence with particularity or to present arguments with specificity." *Id*. (citing *Nation Union v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996)).

Plaintiffs in one fell swoop seek to exclude from trial more than 1,000 pages of police reports submitted at the summary-judgment phase. Brief, pg. 1. They divide their request into reports "involving events that occurred prior to February of 2013 and after June of 2014," Id. at 3-8, and then "all police reports, including those allegedly created in February of 2013 to June of 2014." Id., pp. 8-15. But beyond those two general groupings, they offer only generalized objections referring to unspecified mass groupings of reports. *See, e.g*., Brief, pg. 4 ("[m]ost of the reports" either do not involve plaintiffs, predate February 2013, or involve people unrelated to plaintiffs' family"); pg. 5 ("[m]ost of the police reports" contain or are supported by inadmissible statements); pg. 6 ("most, if not all" reports were first learned of during this litigation); pg. 7 ("a vast majority of the alleged police reports were not even know to the individual Defendants in this case until after this suit was filed"); pg. 8 ("[m]ost, if not all, of those police reports" contain hearsay, are irrelevant, improperly offer character evidence and/or should be excluded under FRE 403).

Where a motion in limine simply asserts objections without tying them to specific evidentiary items, the Court properly may deny it as overbroad and insufficiently specific. *See United States v. Cervantes*, 170 F. Supp. 3d 1226, 1236 fn. 6 (N.D. Cal. 2016) (where movant sought to exclude "on relevance and Rule 403 grounds," court denied motion as "overbroad, insufficiently specific, and premature"); *Kirk v. Schaeffler Grp. USA, Inc.*, 2016 U.S. Dist. LEXIS 17315; 2016 WL 593910, at *2 (W.D. Mo. Feb. 12, 2016) (denying without prejudice motion *in limine* seeking to exclude "any documents, opinions, or other evidence that Plaintiff has not disclosed" because the request was "insufficiently specific") (citation omitted); *Hankins v. Ford Motor Co.*, 2012 U.S. Dist. LEXIS 6646; 2012 WL 174793, at *5 (S.D. Miss. Jan. 20, 2012) (rejecting Ford's request to bar plaintiff from presenting "evidence of recalls, technical bulletins, or defects in other vehicles," since the motion "is insufficiently specific") (citation omitted); *Evans v. Port Auth. of New York & New Jersey*, 2005 U.S. Dist. LEXIS 19796, at *6-*7 (S.D.N.Y. Sept. 13, 2005) (while it "seems likely" that much of plaintiff's evidence should be excluded, "the motion papers now before the Court are insufficiently specific to permit detailed determinations," and parties ordered to meet and confer to narrow the issues).

Here, Plaintiffs assert sweeping objections to a group of more than 1,000 documents but do not tie specific legal objections to any specific documents. The

Court will therefore deny this motion without prejudice. *Cline*, 188 F. Supp. 2d at 1292; *see also Starr v. QuikTrip Corp.*, 2016 U.S. Dist. LEXIS 182040; 2016 WL 7665589, at \*2 (N.D. Okla. Nov. 21, 2016) (quoting *Walsh v. United States*, 2009 U.S. Dist. LEXIS 27238; 2009 Westlaw 3755553, at \*1 (N.D. Okla. March 31, 2009)) ("A court is within its discretion to deny a motion *in limine* that fails to identify the evidence with particularity or present arguments with specificity").

This motion is denied without prejudice.

### F.  Defendants' Motion *in Limine* to Preclude Plaintiffs from Admitting Evidence Contradicting their Global Settlement with the Hamames Based on Judicial Estoppel [#189]

Defendants next argue that Plaintiffs should be judicially estopped from seeking the fair market value of the 23 properties at issue in this case.  Defendants maintain that Plaintiffs' theory of damages is directly contrary to their representations before the Wayne County Circuit Court as part of a settlement agreement between the Plaintiffs and the Hamames.  Defendants assert Plaintiffs represented to the state court judge that they were receiving fair market value for the properties at issue, therefore they should be precluded from offering evidence of property values contradicting their representations made as part of the Hamame settlement agreement.

"Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical

gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1217-18 (6th Cir. 1990). While "there is no set formula for assessing when judicial estoppel should apply, at a minimum, a party's later position must be clearly inconsistent with its earlier position." *Lorillard Tobacco  Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008)(internal quotation marks and citation omitted).

The settlement agreement with the Hamames involved over 50 different individuals and entities, in 13 civil actions containing various claims, cross-claims, counter claims, third party claims and intervening claims. Defendants were not a party to the lawsuits or the settlement agreement. Paragraph 11.5 states that the terms of the Agreement, "shall not constitute or be construed to be an admission on the part of any of the Parties hereto . . ." The parties further agreed in paragraph 11.9 that their settlement was "not on the record." Paragraph 11.19 further states that:

> Adequacy of consideration. Each and all of the individuals and entities making up the Parties hereto acknowledge and agree that the consideration received by each of the set forth herein is fair, adequate, and sufficient in exchange for the consideration given by such parties.

Defendants argue the Settlement Agreement's reference to the exchange of consideration being "fair, adequate, and sufficient" conclusively establishes that the Plaintiffs were paid fair market value for their properties. However, the

19

Agreement specifically states that "it is the intent and express purpose of each of the Parties hereto that this Settlement Agreement . . . fully and finally resolve" any and all disputes "between or among the Parties . . . ."  As such, the Plaintiffs agreement that the consideration exchanged was fair in the context of the disputes at issue in the state court is not clearly inconsistent with their later position regarding the fair market value of the subject properties.  Because the Plaintiffs' position is not clearly inconsistent with their Settlement Agreement's representations, judicial estoppel is not appropriate.  The Court will therefore deny Defendants' Motion *in Limine* to Preclude Evidence Contradicting their Global Settlement with the Hamame Family.

### G.  Defendants' Motion *in Limine* to Allow Certain Testimony of Defendant/Corporation Counsel Walling [#190]

Defendants next assert that the attorney-client privilege should not preclude Defendant Walling from testifying about conversations she had with non-party Tom Tafelski, a former member of the City Council.  Defendants argue Mr. Tafelski's anticipated testimony concerning conversations he had with Defendant Walling will not be accurately portrayed by Mr. Tafelski and she seeks a ruling that the attorney client privilege does not bar her from rebutting Mr. Tafelski's purported false testimony.

This motion will be denied.  Mr. Tafelski was deposed nearly seven months prior to Ms. Walling.  Now, three and a half years after Mr. Tafelski was deposed and two and a half years since Ms. Walling sat for her deposition, Defendants ask the Court to permit Ms. Walling to offer new evidence well beyond the discovery cutoff in this matter.  Moreover, Defendants fail to provide sufficient specificity. They do not identify the particular conversations between Ms. Walling and Mr. Tafelski at issue and do not explain why Ms. Walling could not correct the record during her deposition.  It is well settled that "litigants cannot hide behind . . . [t]he attorney-client privilege . . . as a shield" and then subsequently use it as "a sword." *In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005).

This motion is denied.

### H.  Defendants' Motion *in Limine* to Bar Evidence Relating to Haidar-Fakhoury Phone Call [#191]

Defendants also seek to exclude all evidence relating to the recording of the phone call between non-party Marwan Haidar and Plaintiff Hakim Fakhoury.  At Mr. Haidar's deposition, Plaintiffs for the first time produced an audio of part of a phone call purportedly between Mr. Haidar and Mr. Fakhoury.   On the call, Mr. Haidar tells Mr. Fakhoury "[t]he mayor fucked you" and "want[s] to destroy you," and "will hunt you down." Mr. Haidar describes a vendetta by the Mayor against Mr. Fakhoury, claiming that the Mayor warned the Hamames that "it's either this

or this way, pick it.  What do you want?  You want to do business?  [The Fakhourys] can't be your partner."  Mr. Haidar further says that he is being truthful and "swears on his mother's grave."

However, Mr. Haidar recanted his statements during his deposition testifying to being pressured to take part in the staged call by Hakim Fakhoury, who had his son follow Haidar and engage him in several physical fights, to the point where Mr. Haidar was scared.  Mr. Haider testified that Mr. Fakhoury told him what to say on the call.

Here, the audio recording and evidence related thereto is classic hearsay. Hearsay is an out of court statement "that a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Hearsay is inadmissible unless a statutory or court-rule exception applies.  Fed. R. Evid. 802.

Plaintiffs respond by arguing they do not intend to introduce evidence of the phone call for the truth of the matters asserted therein, but to show its effect on Mr. Fakhoury.  However, this argument is without merit. There is record evidence from Mr. Haidar suggesting that Mr. Fakhoury asked Mr. Haidar to make the call and statements about the Mayor's animus.  Even if the phone call evidence was admissible under an applicable exception, it still would be subject to exclusion under Rule 403 because its probative value is substantially outweighed by the danger of unfair prejudice.  The record before the Court is that Mr. Haidar recanted

his statements concerning the Mayor's purported ill will towards Mr. Fakhoury.

The phone call lacks any indicia of trustworthiness, and therefore, any small

probative value is substantially outweighed by the danger of unfair prejudice.

This motion will be granted.

### I. Plaintiffs' Motion *in Limine* to Exclude References to 1) Alleged Pre-2013 Judgments, Liens, Receiverships, or Foreclosures Relating to Plaintiff Hakim, 2) Alleged Investigations (Including the DOJ Investigation) Relating to Plaintiffs, 3) Defendants O'Reilly's and Walling's Personal Finances or Health Issues, and 4) Taxpayer Dollars or Costs [#192]

Next, Plaintiffs seek to bar Defendants from 1) making any reference to

alleged investigations of Plaintiffs, including the one involving the DOJ and postal

service,  2) making any reference to any previous judgments, liens, receiverships,

or settlements involving Hakim Fakhoury pre-2013 –including the six million

dollar Marathon judgment regarding Mr. Fakhoury's gas stations and a Comerica

judgment related to his gasoline operations, 3) making any reference to the fact

Defendants will be retiring soon and should not be subject to a personal judgment

and 4)  making any reference to taxpayer dollars being used to satisfy a judgment

in this matter.

Plaintiffs claim this Court should prohibit Defendants from referencing pre-

2013 judgments, liens, receiverships, or foreclosures relating to Plaintiff Hakim

because these events (1) "have no relevance to the issues that occurred in 2013 and

2014"; (2) "will confuse the jury"; and (3) "any relevance is substantially more prejudicial than probative."

First, the events are undeniably relevant to the case at bar. "Relevance under the Federal Rules of Evidence is a low threshold, easily satisfied." *United States v. Gramins*, 939 F.3d 429, 450 (2nd Cir. 2019). Evidence is relevant so long as it "(a) has any tendency to make a fact more or less probable than it would be without the evidence and (b) the fact is of consequence in determining the action." FRE 401. The evidence Plaintiffs seek to exclude is relevant because it is a potential source of emotional stress that could be an alternative cause of Plaintiffs' alleged emotional damages. The jury is entitled to weigh these other potential causes of Plaintiffs' alleged damages.

Plaintiffs further claim that introduction of past judgments would confuse the jury and cause substantial prejudice to the Plaintiffs. Even if these judgments did cause some confusion or prejudice to the Plaintiffs, relevant evidence may only be "excluded if the evidence's probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" Fed. R. Evid. 403. "The exclusion of evidence under Rule 403 is an extraordinary remedy and should be used sparingly." *United States v. Henthorn*, 864 F.3d 1241, 1255 (10th Cir. 2017). Apart from merely stating that this evidence would cause undue

prejudice and confusion, Plaintiffs do not actually explain how or why this would be the case, or why a curative instruction would be inadequate.

As to the 2015 DOJ investigation, the DOJ obtained a warrant, raided and seized personal items belonging to Plaintiffs, including jewelry and cash from their home, gas station, and bank accounts." Here, Defendants cannot argue the 2015 DOJ investigation and raid could be the causation of Plaintiffs' mental and emotional distress as this investigation occurred after the Fakhourys were divested of their properties. As such, this evidence is not relevant to a potential cause of Plaintiff's mental anguish. Moreover, the DOJ investigation led to no charges being filed. This evidence will be unfairly prejudicial under Rule 403 because it will suggest to the jury that Fakhourys are engaged in illegitimate activities. The DOJ investigation is inadmissible.

As to the finances of the Defendants and references to taxpayer dollars satisfying the judgment, this category of evidence will also be excluded pursuant to Rule 403 as this evidence may result in the jury reaching its verdict on an improper basis. This evidence is also inadmissible.

As such, Plaintiffs' present motion will be granted in part and denied in part. The 2013 judgments, liens, receiverships, or foreclosures relating to Plaintiff Hakim are admissible because they are relevant to the issue of causation relating to emotional distress damages.

### J.  Defendants' Motion *in Limine* to Bar Testimony About Alleged Mayoral Ultimatum and to Preclude Lay Opinion Medical Causation Testimony [#193]

Defendants next argue that there is no admissible evidence concerning Defendant O'Reilly's purported "ultimatum" to the Hamames that if they wished to continue doing business in Dearborn, they had to oust the Fakhourys from their joint business arrangement.  Plaintiffs have claimed from the inception of this lawsuit that a meeting between the Mayor, Defendant Walling, Sam Hamame, Mike Hamame and local businessman, Rick Marra, occurred at Habib's Restaurant on February 15, 2013.  Defendants maintain any evidence of this alleged ultimatum is inadmissible because there are no witnesses with personal knowledge who can testify that Mayor O'Reilly issued an ultimatum to the Hamame family. Neither Plaintiff attended the meeting, and Mr. Haidar, who purportedly overheard the conversation at the restaurant, disavowed under oath during his deposition that he overheard this conversation or that he had ever been a patron of Habib's restaurant.

In response, Plaintiffs fail to address Defendants' argument that there is an absence of admissible evidence demonstrating the Mayor made a threatening ultimatum to the Hamames.  Plaintiffs incorrectly suggest the Court has already made a ruling on the admissibility of the Mayor's purported ultimatum; however the Court's decision did not rely on the purported ultimatum in denying summary

26

judgment. As such, the Court has never determined whether a proper foundation for the ultimatum has been made. On this record, the Court cannot hold as a matter of law that a proper foundation has been made as to the admission of the ultimatum evidence. There are no witnesses with personal knowledge who can lay the proper foundation. Mr. Haidar has recanted his earlier statement that he overhead the Mayor threaten the Hamames. This aspect of the Defendants' motion will be granted.

Next, Defendants seek an order precluding Plaintiffs from testifying that Mr. Fakhoury's stroke in 2013 was caused by the Defendants. In response, Plaintiffs appear to mischaracterize Defendants' request as improperly seeking to exclude broad categories of evidence relating to mental and emotional damages. However, Defendants only seek to preclude lay testimony that Defendants caused Mr. Fakhoury's stroke because such testimony must come from a qualified expert. The Court agrees.

Lay witnesses may testify to their personal observations of injuries or symptoms that are within the common realm of knowledge. See *Kovacic v. Ponstingle*, No. 1:05CV2746, 2014 U.S. Dist. LEXIS 133600, *10-11 (N.D. Ohio Sep. 22, 2014). In cases where "there is no single, concrete incident from which plaintiffs can trace their alleged injuries[,]" but rather "multiple causes of plaintiffs' injuries, including events that took place both well before and after" the

27

unconstitutional acts, expert testimony as to causation is required.  *Id*. Similar to

the plaintiffs in *Kovacic*, there is no way for the lay juror to determine whether Mr.

Fakhoury's stroke was caused by the discrete events that gave rise to this action

without expert testimony.  As such, Plaintiffs may testify to "their own

observations about their conditions and other matters that are within their personal

experience." *Kovacic,* 2014 U.S. Dist. LEXIS 133600, at *6.  However, they may

not testify concerning causation of Mr. Fakhoury's diagnosis.  This aspect of

Defendants' motion will also be granted.

### K.  Defendants' Motion *in Limine* to Bar Certain Testimony from Hakim Fakhoury [#194]

Defendants also move to exclude statements consistent with Mr. Fakoury's

January 22, 2019 Corrected Affidavit.  Defendants argue the statements should be

excluded because they are not based on personal knowledge or a proper

foundation, they are irrelevant and likely to confuse the jury.

First, Defendants maintain several statements are inadmissible hearsay.  The

Court has already determined the Haidar-Fakhoury phone call statements are

inadmissible.  Accordingly, all statements related to this conversation will be

excluded, including Exhibit X.

As to Mr. Fakhoury's statements concerning information he learned from

Cynthia J. Grimwade and John Tanner, III, the Court will deny this aspect of

Defendants' motion without prejudice.  Plaintiff may be able to establish the admissibility of this evidence during the time of trial when the Court can properly evaluate whether an exception applies.

Defendants also argue several of Mr. Fakhoury's statements lack personal knowledge or they are improperly conclusory and should be excluded.  As to paragraph 6 in Mr. Fakhoury's corrected affidavit regarding defense counsel's purported relationship with Mr. Haidar and his girlfriend, the Court has already ruled this paragraph is inadmissible in a prior decision.  *See* ECF No. 166, PageID.16760.

As to the remaining paragraphs that Defendants seek to exclude, the Court finds Defendants' arguments are premature.  Mr. Fakhoury may be able to establish personal knowledge for his statements.  Thus, the Court will deny without prejudice Defendants' request to strike paragraphs 8, 14, 17, 21, 28, 29, 37, 40, 41, 42, 43, and 45 of Mr. Fakhoury's Corrected Affidavit.  Accordingly, Defendants' Motion to Bar Certain Testimony of Hakim Fakhoury will be granted in part and denied without prejudice in part.

### L.  Defendants' Motion *in Limine* to Bar Certain Testimony from Tom Tafelski, Keith Woodcock and the Fakhourys [#195]

Defendants seek to preclude certain testimony from Tom Tafelski, former City Council President. Mr. Tafelski worked on the council when Mayor O'Reilly

took office in 2008 and continued working alongside Defendant O'Reilly in that capacity for the following sixteen years.  Defendants argue Mr. Tafalski's anticipated statements lack the requisite personal knowledge required by Fed. R. Evid. 602.  Specifically, Defendants seek to preclude Mr. Tafelski from testifying that Mayor O'Reilly is a bully and vindictive or that Department heads were expected to serve at the pleasure of the Mayor.  Defendants further assert Mr. Tafelski should be precluded from testifying that he believed Mayor O'Reilly disliked the Fakhourys and that the Mayor implied Mr. Fakhoury's financing came from illegitimate sources.

Here, Mr. Tafelski has worked as a member of the City Council alongside Mayor O'Reilly during the operative events giving rise to this action.  His impressions formed from day-to-day interactions and experiences gained from working alongside the Mayor are relevant to the Mayor's treatment and ill will towards the Plaintiffs.

Defendants also seek to exclude any evidence related to collection of rent, including Mr. Tafelski's and Mr. Woodcock's testimony that the Mayor informed the City Council to instruct tenants to pay the Hamames or the bank, and not to pay the Fakhourys.  Because there is admissible evidence in the record from the Fakhourys, Tafelski and Woodcock, this aspect of Defendants' motion will also be

denied.  However, to the extent any of these witnesses' testimony relies on

hearsay, such testimony is inadmissible.  This motion will be denied.

### M.  Plaintiffs' Motion *in Limine* to Preclude 1) the Use and/or Mention of Polygraph Evidence and/or 2)  Evidence Related to April Fakhoury Being an Alleged Alter Ego of Hakim Fakhoury for the Properties at Issue [#196]

Plaintiffs move to exclude any evidence of April Fakhoury refusing to take a

polygraph test, as well as exclude any evidence that April Fakhoury is the alter ego

of Hakim Fakhoury.

### 1.  Polygraph Evidence

"Whether to admit a party's refusal to submit to a polygraph examination is

within the trial court's discretion."  *United States v. Harris*, 9 F.3d 493, 501 (6th

Cir.1993) (trial court has discretion in determining whether evidence of a party's

willingness to submit to a polygraph is admissible).  "The trial court must first

determine whether the proffered evidence is relevant.  If the court finds that the

evidence is relevant, it must then balance the probative value of the evidence

against the hazard of unfair prejudice and jury confusion."  *Id.*; *see also United*

*States v. Neuhard*, 770 F. App'x 251, 255 (6th Cir.), cert. denied, 140 S. Ct. 570,

205 L. Ed. 2d 365 (2019).  In short, "[t]he district court's inquiry consists of

whether the evidence is relevant and whether its probative value outweighs its

prejudicial effect."  *United States v. Blakeney*, 942 F.2d 1001, 1014 (6th Cir.

1991); citing *Wolfel v. Holbrook*, 823 F.2d 970 (6th Cir. 1987), cert. denied, 484 U.S. 1069, 108 S.Ct. 1035, 98 L.Ed.2d 999 (1988).

Here, the relevance of evidence that Mr. Hamame took a polygraph test, and Mrs. Fakhoury did not, is dubious at best. Defendants argue the different conduct between Mr. Hamame and Mrs. Fakhoury played a role in the different treatment between the two families. However, the record before the Court is devoid of evidence showing any of the remaining Defendants had knowledge of Mrs. Fakhoury's unwillingness to sit for a polygraph examination and that Mr. Hamame took a polygraph examination. Even if Defendants can establish they knew the two business owners responded differently when asked to sit for a polygraph examination and this knowledge impacted Defendants' responses to, and treatment of the Hamames versus the Fakhourys, the probative value of this polygraph evidence is outweighed by the risk of prejudice.

The Sixth Circuit Court of Appeals has held admission of a defendant's refusal to submit to a polygraph examination was error because the "marginal relevance of [the defendant's] refusal to submit to polygraph testing was outweighed by its prejudicial effect." *Wolfel v. Holbrook*, 823 F.2d 970, 974-75 (6th Cir. 1987). "[S]ince an individual's refusal to volunteer for polygraph testing is likely to create a high prejudicial inference that the results of the test would have been unfavorable, such evidence must be excluded." *Id*. Consistent with *Wolfel*,

the Court finds any marginal relevance provided by the polygraph evidence is outweighed by its prejudicial effect.

### 2. Alter Ego

Next, Plaintiffs argue any reference to April Fakhoury as the "alter ego" of Hakim Fakhoury is irrelevant, will confuse the jury and is highly prejudicial because it will suggest the Fakhourys are engaged in illegal dealings to evade creditors.  Plaintiffs explain that Defendants have included a partner at Plaintiff's law firm on their Witness List suggesting counsel's partner was involved in assisting Mrs. Fakhoury with creating the alter ego entities.

Defendants respond that Mr. Fakhoury's business background is highly relevant to the damages issues in this case.  The Court agrees that Mr. Fakhoury's business background is relevant to the damages issue.  Plaintiffs cannot rely on the doctrine of collateral estoppel where there is no privity between the Defendants and the Hamames.  The Court will deny this aspect of Plaintiff's motion without prejudice.

### N.  Plaintiffs' Motion *in Limine* to Preclude Defendants' Witnesses Whose Anticipated Testimony Was Not Disclosed [#197]

Plaintiffs also complain that Defendants failed to provide the anticipated testimony of 194 of their witnesses, including 82 witnesses disclosed for the first time on the last day of discovery.

On November 28, 2017, this Court entered a Scheduling Order in this matter.  ECF No. 36.  The Court set discovery cutoff for August 31, 2018.  *Id*., PageID.938.  The Court's Scheduling Order states in relevant part:  "Discovery <u>shall be completed on or before</u> the date set forth in the scheduling order.   The court will not order discovery to take place subsequent to the discovery cutoff date."  *Id*. at PageID.939 (emphasis in original).  Discovery was subsequently extended 60 days until October 31, 2018.  On May 29, 2018, Defendants served their Responses to Plaintiffs' First Interrogatories.  Interrogatory number 2 seeks the following: "For each non-expert witness Defendants may call at trial, please state their name, last known address, telephone number, and a complete summary of their anticipated testimony."  ECF No. 197, PageID.18354.  Defendants responded that the request was overly broad, and they did not provide any details about their anticipated witnesses.

 Under Rule 26, "[a] party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]"  Fed. R. Civ. P. 26(e)(1)(A).  "This duty to supplement continues throughout the trial proceedings, and it does not terminate at the end of the formal discovery period."

*Hubbell v. FedEx SmartPost, Inc*., 2016 WL 3197492, at *8 (E.D. Mich. June 9, 2016) (collecting cases).

Rule 37 holds that if a party fails to identify a witness or supplement its disclosures as is required under Rule 26(a) or (e), the witness is barred from testifying at trial. Fed. R. Civ. P. 37(c)(1). The Sixth Circuit holds that the "'Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *U.S. ex rel. Tennessee Valley Auth. v. 1.72 Acres of Land In Tennessee*, 821 F.3d 742, 752 (6th Cir. 2016).

Indeed, "exclusion of late or undisclosed evidence is the usual remedy for noncompliance with Rule 26(a) or (e)[.]" *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015). "In fact, the language of Rule 37 suggests that exclusion is mandatory in these circumstances, and the Sixth Circuit has cited with approval a Seventh Circuit decision to that effect." *SPX Corp. v. Bartec USA, LLC*, 574 F. Supp. 2d 748, 755 (E.D. Mich. 2008). The reason why is that "[t]he purpose of Rule 37 is not only to punish discovery abusers, but also to protect litigants who legitimately seek information to prepare for trial." *Id.*

Here, Defendants may call only witnesses who were deposed or witnesses whose anticipated testimonies were disclosed during discovery, but not witnesses

whose anticipated testimonies were never disclosed or supplemented when requested in Plaintiffs' interrogatories.

The Sixth Circuit adopted a five-part test "[i]n order to assess whether a party's omitted or late disclosure is 'substantially justified' or 'harmless[.]'" *Howe*, 801 F.3d at 747-48. Those factors are:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id*. at 748. Here, Plaintiffs were surprised to learn Defendants added 80 witnesses to their Rule 26 Disclosures and 79 witnesses to their Witness List on the last day of discovery. By the time Defendants disclosed these witnesses on the last day of discovery, the case had been ongoing for over two years. Further, to this day – almost five years after the start of this case – Defendants have yet to disclose the anticipated testimony of the 194 witnesses as they are required to do under Rule 26(e).

The second factor – ability to cure – also weighs heavily against Defendants. There is no way to cure Defendants' failure that will not substantially prejudice Plaintiffs or further delay trial. By not disclosing the anticipated testimony of 194 witnesses that they may rely on at trial, as requested in Plaintiffs' First Interrogatories to Defendants, Plaintiffs have lost

the opportunity to use the discovery process to explore these witnesses and the subject matter of their testimony "to prepare for trial." *SPX Corp, supra.*

The third and fourth factors – the extent of the disruption to trial and the importance of the evidence – weigh heavily against Defendants, as well. Allowing the 194 witnesses to testify now would delay and disrupt trial because not only have Plaintiff had no prior opportunity to conduct discovery on these witnesses, but they would also be required to call additional witnesses or introduce additional evidence in an attempt to remedy the prejudice sustained as a result of the unfair surprise of the 194 witnesses.

Finally, the fifth factor – Defendants' explanation for its failure to disclose the evidence – certainly weighs against Defendants.  There is no legitimate justification for why Defendants have gone years without supplementing their interrogatory responses regarding the anticipated testimony at trial for the Tiers Three and Four Witnesses.  Accordingly, every factor weighs against Defendants and they cannot show harmlessness or a substantial justification to overcome the mandatory Rule 37 sanctions.

This motion is granted.

## III.   CONCLUSION

Accordingly, for the reasons articulated above, Plaintiffs' *Daubert* Motion to Exclude Defendants' Damages Experts and Expert Report [#185] is DENIED WITHOUT PREJUDICE.

Defendants' Motion *in Limine* to Preclude Admission of Kenneth H. Johnson's Expert Reports and Testimony Relating to the Reports [#186] is GRANTED.

Defendants' Motion *in Limine* to Preclude Admission of State Equalization Values as Evidence of Market Value [#187] is GRANTED.

Plaintiffs' Motion *in Limine* to Exclude All Police Reports [#188] is DENIED WITHOUT PREJUDICE.

Defendants' Motion in Limine to Preclude Plaintiffs from Admitting Evidence Contradicting their Global Settlement with the Hamames Based on Judicial Estoppel [#189] is DENIED.

Defendants' Motion *in Limine* to Allow Certain Testimony of Defendant/Corporation Counsel Walling [#190] is DENIED.

Defendants' Motion *in Limine* to Bar Evidence Relating to Haidar-Fakhoury Phone Call [#191] is GRANTED.

Plaintiffs' Motion *in Limine* to Exclude References to 1) Alleged Pre-2013 Judgments, Liens, Receiverships, or Foreclosures Relating to Plaintiff Hakim, 2) Alleged Investigations (Including the DOJ Investigation) Relating to Plaintiffs, 3)

Defendants O'Reilly's and Walling's Personal Finances or Health Issues, and 4) Taxpayer Dollars or Costs [#192] is GRANTED IN PART AND DENIED IN PART.

Defendants' Motion *in Limine* to Bar Testimony About Alleged Mayoral Ultimatum and to Preclude Lay Opinion Medical Causation Testimony [#193] is GRANTED.

Defendants' Motion *in Limine* to Bar Certain Testimony from Hakim Fakhoury [#194] is GRANTED IN PART AND DENIED IN PART.

Defendants' Motion *in Limine* to Bar Certain Testimony from Tom Tafelski, Keith Woodcock and the Fakhourys [#195] is DENIED IN PART AND GRANTED IN PART.

Plaintiffs' Motion *in Limine* to Preclude 1) the Use and/or Mention of Polygraph Evidence and/or 2)  Evidence Related to April Fakhoury Being an Alleged Alter Ego of Hakim Fakhoury for the Properties at Issue [#196] is GRANTED IN PART and DENIED WITHOUT PREJUDICE IN PART.

Plaintiffs' Motion *in Limine* to Preclude Defendants' Witnesses Whose Anticipated Testimony Was Not Disclosed from Testifying at Trial [#197] is GRANTED.

The parties shall submit a revised, proposed Final Pretrial Order consistent with the instant Order no later than May 10, 2022.

A final pretrial conference will be held on <u>May 17, 2022 at 2:00 p.m</u>.

Jury trial shall commence on <u>May 31, 2022 at 9:00 a.m</u>.

SO ORDERED.

Dated:  March 28, 2022                    /s/Gershwin A. Drain
                                          GERSHWIN A. DRAIN
                                          United States District Judge


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 28, 2022, by
electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Deputy Clerk